I want to introduce one of our newest justices, Justice Bollinger, and welcome him for his first day of oral argument. So, we're glad to have him. Good morning. Alright, so, for the first matter today, we are at Hendrick et al. v. Hendrick et al. 5-45-0250. Counsel for Appellant, are you prepared to begin? Yes, Your Honor. Alright, and appellee, you're also ready as well? Yes, Your Honor. Alright, thank you. So, counsel, when you approach, if you would, just state your name for the record, and the timer will start then, okay? Very good. Alright, thank you. May I approach? Yes, of course. Please do. May it please the Court, Justices Sholar, McKaney, and Bollinger, my name is Kevin Evans. I'm one of the lawyers who represents the appellants, plaintiff appellants in this case. With me in the courtroom today also is Chuck Lefebvre, whose firm handled the matter at the trial court level. And the question we're here to address today, Your Honors, is whether the trial court erred in dismissing Count 1 of the Third Amendment complaint. With prejudice, alleging a breach of fiduciary duty by Roberta Hendrick as a co-trustee. And just as a preliminary matter, the co-trustees in this case were on our Elizabeth Hendrick, who is one of our clients, one of Mr. Lefebvre and my clients. She goes by the name of Betsy, that's just how she refers to herself, so that's how I'm going to refer to her. And Roberta Hendrick goes by the name of Bobby, so that's how I'm going to refer to her. That's how she's referred to in the briefing as well. I just didn't want to suggest that I'm taking informalities here. That's just how they refer to themselves, so that's how I will as well. And to start out, Your Honors, I want to address the fundamental reason why it was wrong to dismiss Count 1, particularly with prejudice. And that is that there was a failure to recognize that an individual who serves as a trustee, but who also serves in multiple other fiduciary roles, such as in this case in a closely held corporation, an officer or director of a company, a closely held company in this case, that individual cannot simply take their hats on and off, their trustee hat on and off at will. That individual wears that trustee hat in all matters, in all decisions, and must act accordingly, must consider the consequences to the trust and the beneficiaries of their actions at all times. The Second Circuit Federal Court of Appeals Insultment that we have quoted and cited to in our briefing expresses that quite nicely. In fact, the federal court in that case went on to say that when you do what Bobby has done here, and you're a trustee, an officer, and a director, you operate the company as a representative of the estate. Because your highest fiduciary duties, your most intense fiduciary duties, are those as a trustee. And you can't just avoid those duties by saying, well, I'm acting as an officer, I'm acting as a director. You can't take that hat off. That hat remains on at all times. In fact, the Massachusetts Court of Appeals in Johnson put it quite nicely. It said that while the fiduciary may purport to wear one hat at a particular moment, in truth, all hats are worn together at all times. So with that in mind, I would like to move into the guts of the argument. And let's start with why the trial court, we believe, got it wrong. And the statement that epitomizes that is found on page 10 of the court's order. And there the court said that, and there isn't much discussion of count one in the order. Most of it pertains to the counts that aren't appear on appeal that weren't appealed. The director and officer breaches. But on page 10 of the order, the trial court said that a breach of fiduciary duty does not arise simply because the co-trustees can't agree. Okay, that's probably not a controversial statement. But where the court went wrong is the court then said, and since the argument or the allegation here is they couldn't agree, and that's what the breach of fiduciary duty is based on, 2615 requires dismissal of the complaint. But in doing that, the court ruled on a quintessential question of fact. And that is, look, if you can't agree, if the co-trustees can't agree, does that mean that we can just dismiss the complaint? Or does that mean that there's a question of fact as to whether the failure to agree gives rise to a breach of fiduciary duty? And we suggest, and we think the law is quite clear here, that breach of fiduciary duty is, in fact, a fundamental quintessential fact. And it's not disposed of on a motion to dismiss. So what were the allegations of breach in the Third Amendment complaint? Those are found, Your Honors, in paragraphs 64 through 68 of Count 1 of the Third Amendment complaint. For instance, in paragraph 64A of the Third Amendment complaint, it is alleged that Bobby, and this is a quote. Before you get to the counts in the Third Amendment complaint, is it correct that the Second Amendment complaint and the Third Amendment complaint are absolutely identical as to that count? As to that count? Yes. And what impact does that have for this Court? I don't believe it has any. Because the Second Amendment complaint is not the operative complaint. The Third Amendment complaint is. The Court really did not. The Second Amendment complaint was dismissed without prejudice. The Third Amendment complaint was dismissed with prejudice. But wouldn't logic dictate that the Third Amendment complaint would then have beefier allegations, so to speak? I mean, wouldn't there have been additional allegations put, and why weren't there? Well, Your Honor, in the Second Amendment complaint, there was an allegation. The factual parts, the ultimate facts, and the evidentiary facts were combined in the Second Amendment complaint. And the Court ruled that you need to separate those out. You need to tell us what the breach of fiduciary duty is and then what the other breaches are. And that's what led to the Third Amendment complaint. Did you? Paragraphs 64, 65, 66, and 67 are the operative paragraphs. We don't think there's anything more that needs to be said. We broke the other parts out and put them in later complaints. Although I should say I wasn't involved in that, but it was done at that time. But Paragraphs 64 through 68 are the operative paragraphs that we need to look at here to determine whether there's been ultimate facts alleged of a breach of fiduciary duty. So Ken says the crux of your argument here that Bobby, while her husband was receiving some sort of income from this company, at the same time this company is suffering a net operating loss, borrowing apparently, to pay its operating expenses. And that by doing so, Bobby, who is shutting out this other trustee, is essentially self-dealing. Is that in essence the argument? That is part of the argument. Yes, that is part of the argument. So back to my original point then. So his self-dealing alleged counts are in the Paragraphs 64 through 68? It is 64A, Your Honor. 64A. And that paragraph says that Bobby has diverted all resources, including funds raised by borrowing against the trust assets, to her own household. That's Paragraph 64A. And then we contend, Your Honors, that that constitutes an allegation of a breach under the Code Section 802F, which requires a trustee to act in the best interest of all beneficiaries, and Code Section 802B1, which requires a trustee to refrain from acting to benefit herself at the expense of all beneficiaries. But there's more to this, and that's Paragraph 65. And in Paragraph 65, what's alleged there is that Bobby failed to work with Betsy, her co-trustee, to vote the trust stock in a way to ensure competent management. Prior to Bobby orchestrating the appointment of her husband, the removal of Betsy, the replacement with her husband, this company was operating, as alleged in the complaint, at a profit. And immediately it turned into operating at a loss, and continued to operate at a loss throughout Terrell Williams' tenure. And so four years into this in particular, Betsy pushed to have independent, non-conflicted officers and directors appointed. And this is a statement that I think is incorrect in Bobby's briefing, where she says that the co-trustees always voted unanimously as required by the trust. And they say that, but that is not the case. In November of 2019, there was a vote taken for directorship, another vote taken for directorship, and there was not unanimity on the directors. Bobby voted for herself to remain a director so she could continue to see to it that her husband remained as president. Betsy, however, did not vote in favor of Bobby. So there was not unanimity as required by the trust. Yet Bobby, acting as an officer, secretary of the company, voted that trust stock, despite the fact of the required unanimity. And so that was a breach in and of itself. But what's clearly alleged in the TAC, Thurman complaint, is there was not cooperation to ensure competent management of the company, and that, Your Honor, is a violation of several code provisions. Code provision 706B2 requires cooperation with co-trustees, between co-trustees, to avoid impairment of the trust. That's the code section. Code section 802B1 requires avoidance of conflicts between fiduciary and personal interests. Code section 802F requires the trustee to vote trust stock in the best interest of the trust and the beneficiaries. And then finally, code section 804 requires the trustee to act as a prudent person would and to exercise reasonable skill, care, and caution. Our argument here is in the TAC alleges that if a co-trustee were acting in the best interest of the trust and the beneficiaries, then there would have been cooperation between the trustees. There would have been competent management appointed to run this company, and we wouldn't be here today. But that's not what happened. In the response brief at page 10, Bobby says that the plaintiff, and I'm quoting here, the plaintiffs did not plead any specific fact showing any breach of fiduciary duty by Bobby in count one. But as I've just articulated, count one does allege ultimate facts of breaches of fiduciary duty, diversion of assets, failure to cooperate with a co-trustee that results in an impairment of the trust. Those are ultimate facts. And as the Supreme Court said in the chamber, evidentiary facts do not need to be alleged. Ultimate facts are what's alleged. And in fact, the Third Circuit, the Third District, excuse me, in Crampton, which was a trust case where the Third District reversed the 2615 dismissal, specifically said that's what discovery is for. The evidentiary facts are what discovery is for. And the TAC, the Third Amendment complaint, does in fact reasonably inform Bobby of the nature of the claims against him. And so therefore, the Third Amendment complaint, we argue, is sufficient. I would like to touch upon a few of the arguments that Bobby makes, and then I'll likely in rebuttal have a few more comments to say on her arguments. But the one of the primary arguments is that she did not violate or breach her fiduciary duties because you can only do that if you, quote, misappropriate trust property or if you, quote, engage in improper transactions involving the stock. True, those are ways you can breach your fiduciary duties. They're not the universal ways in which you can breach your fiduciary duties. For instance, we've been talking about cooperation among co-trustees. If those were the only two ways you can breach your fiduciary duties as a co-trustee, then 706B2 of the trust code is meaningless because it requires the trustees to cooperate with each other to avoid impairment of trust. It doesn't have anything to do with misappropriating trust property or improper transactions involving the trust stock. And then I see my light is blinking. I'm not quite sure how much to three minutes. Is that how much? Two minutes? Okay. So the other thing I'd like to touch upon just briefly, Your Honors, is that Bobby says that the crux of count one is predicated on, quote, how Bobby managed the company as a director. No, those were the other counts. Count one has to do with the hat, the hat analogy. You can't remove your hat as trustee and say I'm going to take a vote as a director and then slip your hat back on and just ignore the impact that your vote as a director in a closely held corporation had on the trust and the beneficiaries. Yet that is what Bobby attempts to do here. She's saying I acted as a director, so since I say I wasn't acting as a trustee, I didn't breach my fiduciary duties. But the case law out there makes clear you can't do that. You can't slip your hat off one minute and put it back on the next. You're always a trustee. You're always voting. And you always must take the impact of your conduct on the trust of the beneficiaries into consideration. So with that, Your Honors, I will issue if I have any questions. We'll sit down. Any questions? Any questions? No questions. Thank you. All right. Thank you. I'll have time to rebuttal it. All right. Counsel for Adler. And remember to state your name, please. Thank you, Your Honors. My name is Derek Adler. I represent the appellee, Bobby Hendrick, in this case. Your Honors, family-owned businesses operate all across this great state, all across this great country. And there's oftentimes disagreements over what family member should be the CEO or the officer of the company. However, that doesn't give rise to a breach of fiduciary duties simply because a minority shareholder wishes that she was in charge or wishes that a different family member was in charge. No cause of action exists. They have cited no cases, and no cause of action exists under Illinois law or any other law that would allow a shareholder, a minority shareholder, to bring a cause of action against another director or officer because they didn't get their way and weren't elected as an officer of the company. Not just getting their way. It was profitable. Now it's in the tank. Well, Your Honor, half the companies in this country lose money. So if we want to invite a cause of action that would allow any minority shareholder to come into this court and say, the company's losing some money this year so I should have a cause of action, then you're going to open up this courtroom to thousands and thousands of lawsuits. It's not the law. There is no fiduciary duty of profitability, Your Honor. And you could even bring that to another level. You could say, if the company's earning $1 million a year, well, a minority shareholder could come in and say, I think it should have earned $2 million a year. You're not doing a good enough job. That in and of itself is not a breach of fiduciary duty. But that's not the allegation they're making here, is it? I mean, the allegation they're making is essentially that there's, I think Justice Bollinger said, self-dealing. I mean, it could have been more specifically said, perhaps, but that there is some level of self-dealing. And along those lines, isn't there a statutory presumption of a conflict because of the trustee's spouse being involved? Yes, Your Honor, but that's where – so your first question – well, let me answer the second question first. The conflict of interest is naturally there when you're a director and you're a trustee of a trust. By the way, this trust only holds shares. They don't manage other money or anything like that. However, in the trust instrument, as we've pointed out, they're bringing a breach of trust claim. They didn't even attach the trust instrument to the document because it hurts their case. One of those provisions says specifically that if you, as a trustee, are a manager of the company, you can earn compensation to manage that company. In addition, the Articles of Incorporation, which are public records, waive any conflict involved in the family's running that business. And that's going to happen in any family-owned company because no matter who's elected director, if it's a family member, there's always going to be that potential claim. If Bobby's son, if Bobby's nephew, if one of the other board members happen to be president, the same exact claim can be brought. It's not – going back to the question on self-dealing, Your Honor – it's not self-dealing to hire somebody to work as a CEO and get paid for that. As the circuit court pointed out, there's no allegation of secret bonuses, secret or excessive amounts paid to him. To go to work in exchange for compensation is not self-dealing. No case – But what about this notion that, I mean, if discovery's not completed, how are they possibly going to know these things? I mean, we have to take well-pled facts, correct? Exactly, but that's not a well-pled fact. Because if you say there's a claim that they hired Terrell Williams or another family member as an officer, and that's self-dealing because that's a family member, that's the definition of not a claim. Again, if it's turned around, okay, Betsy also is a trustee. Betsy also formerly was the CEO of the company. Okay, and if that had happened against my client's wishes, Bobby, then she would have the exact same claim, and on and on we go. Right now, it's off the record, but right now, the company is managed by Tim Kruger, who is Bobby's son. So if we're going to allow this claim to go forward, in two years from now we'll be back here arguing, oh, this son should not have been in charge. We're talking about, in these allegations, a decision of the directors. Bobby's one of five directors, as alleged. All of those allegations in 64 through 69 go directly to her conduct as a director. There's nothing separate. There's nothing about the trust that's separate. It's all about that. Go ahead. I asked the appellant about the impact of the complaint and the fact that it wasn't amended in any way. I'm going to ask you the same question. What impact does that have on your lawyer? It has a great deal of impact. The circuit court gave them three opportunities to plead a claim and specifically said what allegation in her role as trustee would support a claim. And the court found it deficient both in the first complaint and in the second complaint, which were very similar on count one. And what the plaintiff did is they didn't change a single allegation. They kept the same vague pleadings, which really is just a summary of later allegations with respect to the fact that she brought a derivative claim against my client in her capacity as director. It's a little bit of a summary, 64 through 69, of those allegations at a high level, which are also found to be deficient. And the court, of course, dismissed those with prejudice, rather. If not, any other questions? I do have a question, counsel. So, again, the substance of these allegations that are we take all well-pled facts as true and draw all reasonable inferences therefrom in favor of the plaintiff in this case. And so the substance of these allegations are essentially, as I read them here in count one, is that at a time when this corporation is not making any money and losing money, borrowing money just to pay its operating costs, paying Bobbie's husband some salary, we don't know how much, but some salary. So the only one that's benefiting here is Bobbie and her household, her husband, to the detriment of the other shareholding beneficiaries. How does that not constitute self-dealing, actionable self-dealing for breach of fiduciary duty claim under the law? Well, we've got to break that down. One, again, hiring somebody to work in a company and get paid for services is not self-dealing. That's, you know, we've cited cases where even the Schaefer v. Brine case where an officer who owes a fiduciary duty can enter into negotiations with the company and ask for more money. So the fact you're getting paid for work is not self-dealing. The fact that I think, you know, you're reading a little bit too much into the complaint by saying he's the only one benefiting. I think there's lots of people that are benefiting, that are working at the company. It's very common for a company to borrow money at times, like in this case, where the Hendrick dorms were shut down for COVID, for the University of Illinois shut down. Well, you know, revenue drives up a little bit and you need to borrow money. Okay, so the fact that you allege that a company borrowed money to pay operating expenses, one of which is a salary for, which is not alleged to be exorbitant or anything like that, one of which is a salary for Mr. Williams or any other person, is simply not a claim. Again, if the situation were reversed, we could bring the exact same claim against Betsy because if she gets her way, her way is essentially that this court would have to enter into some type of injunction saying Betsy has to be the president going forward, and then we would have the same claim. It's a criticism of basically what they want this court to do is come into the board and become chairman of the board and say this family member should be in charge instead of that family member. Well, where are we with these allegations? It's not simply that Bobby, her husband, is working for this company, is running this company. It's that he's running it under the ground. He's mismanaging the company. And Bobby's aware of this and does nothing about it, allows it to continue, but the only one benefiting from it is Bobby and her husband. There's no allegation that he's mismanaged, no specifics that he's mismanaged. It's very high level that the company has operating losses and he is getting paid. Except that the company, I mean, they're looking at selling because the bank is essentially not foreclosing, but they're calling a note. I mean, I may be splitting hairs there, but, I mean, they have issues of solvency. Correct? Well, if you were to look beyond, I think, count one, and it's interesting, in their brief they argue that was one of their first arguments, that my client's breaching the fiduciary duty because she's exploring the sale of the company. Not that the sale took place, but that she's exploring the sale, which, of course, is not a breach to explore a sale of a company. So I don't see any claim there, Your Honor. Counsel, back to your point that there's no allegations of mismanagement, paragraph 67 of count one, does it not allege here that Bobby managed the company at this stage primarily for the benefit of herself and her husband by ensuring her husband's continued employment as the highest compensated officer even after he demonstrated complete incompetence for the job, allowing the value of the trust estate to be averted and all income for the benefit of the trust beneficiaries to disappear through his incompetence and mismanagement? It's too conclusory. If the standard is that a company is losing money and a minority shareholder can come in and say, I'm going to bring this breach of fiduciary duty claim because of incompetence, and you're losing money, then any minority shareholder can come in and bring that claim. It's too high level. There's no specifics to it. That's the problem with this. And, you know, when you talk about breach of fiduciary duty against a director, again, Bobby's one of five who elected this person. You have to talk about process. It's not results when you look at the actual case law. Was the decision of the board done with a rational purpose? Was it done outside the bounds of reason? Those types of allegations. That went into the, and it's really duplicative. It shows that we're only talking about her role as director. And another point I would add with what you just quoted, Your Honor, the claim should be a derivative claim. It's talking about eroding the value of the shares. That is a claim. If it's true, which I think is way too conclusory to state a claim, if it's true, that's a derivative claim that has to be brought on behalf of the company. And that's another reason why the court properly dismissed it. And I want to address a few of the cases that he raised. The Salzman case, he talks about that, about the dual capacity. That's, first of all, a Second Circuit case, a federal court case, federal tax court case that was reviewed. The trustee in that case sold shares for less than fair value. The very first case that he relies on in his brief, the Giorgiano case, the trustee sold shares, sold the corpus and property for less than fair value. No Illinois case he cites allows a, particularly in this case where the trust instrument allows one to serve in dual capacity, allows for a breach of trust claim against the director based on actions taken as a director. What I mean is the Giorgiano case, was that on the motion to dismiss or summary judgment? No, that was raised by counsel in the brief, in his appellate brief. But remind me, was that case decided on a motion to dismiss or summary judgment? Shoot, I don't have that in front of me, Your Honor. I'm sorry. That's all right. There's a lot of case law that's been cited. Yeah, but the crux of it is, the crux of the allegation was that the trustee sold shares. No Illinois case he cites would allow a fiduciary duty claim in the capacity as trustee under these circumstances. He can bring a claim on behalf, she can bring a claim on behalf of the corporation in a derivative lawsuit because they're seeking, again, allegations and claims relating to the role of director, but not in this context. And real quickly, if we go into the actual allegations of the complaint, the root or the crux of it is 64B and 66. Betsy and Becky are angry because they were not hired as CEO and manager. They're mad because exclusive management authority over the business by terminating all involvement by Becky and shutting out Betsy from participation. Because 10 years earlier, supposedly, Betsy got shut out. As the trial court found, of course, that was barred by the statute of limitations. But we're going to be round and round. If the claim is allowed to go forward, that my client can be sued for breach of fiduciary duty, pass the pleading stage, simply because she did not elect Betsy, she supposedly made money 10 years ago instead of during the COVID time, then we're going to open up this courtroom to all kinds of my fiduciary claims. It's not the job of this court to become the chairman of the board. And you don't want that job. Thank you. Any questions? No questions, thank you. Any final questions? All right, thank you, counsel. All right, Rebecca. Thank you, Your Honors. Let me just begin by correcting some misstatements. First of all, this is not a minority shareholder case. This is a trusted case. Okay? And that carries with it intense fiduciary responsibilities. Secondly, it's false to say that Betsy and Becky want to be appointed president. In fact, the allegations in the tag are that they did not. They found someone who was competent and experienced, unlike Bobby's husband, to run this company, and Bobby refused to entertain hiring a competent and experienced person. So that's just false. Okay? And I don't want this court to walk away with false impressions. The G. Ignorio case was the reversal of a 2615 dismissal. Okay? So what we're asking the court to do here. And if I recall, in that case, there was a family conflict as well. There was. Is that correct? There was. Okay. Your Honor, in terms of not self-dealing to appoint a husband, I'm not sure what universe we're in here. That's the quintessential definition of self-dealing. And it raises a presumption of fraud that it's Bobby's duty, not ours, Bobby's duty to rebut with clear and convincing evidence. In terms of the Bobby being one of five directors or votes, well, that's interesting because Bobby, Betsy, and the trust stock control the majority of the shares. So if they had cooperated, they could have appointed experienced, qualified people. Finally, Your Honors, this concept of, hey, family members all across this country are set up so that there's dual capacities and there's no breach of undivided loyalties if your servant is a trustee and an officer director. Well, those cases do not absolve a trustee of liability for breach. You can do that, but you're still responsible for breach. In fact, one, two of the very cases Bobby cites, the debt case and the estate of Hala's case, recognize that very principle, that if a breach was committed in bad faith, was intentional, or was reckless, that gives rise to a cause of action. And in fact, the estate of Hala's case was tried on that basis because the court found that that's a question of fact, not a question of law, a question of fact. Did the trustee act intentionally in bad faith or recklessly? We have alleged in the tact that all three of those happened. And that gives rise to a trial. It doesn't give rise to a 2615 dismissal. So, and then finally, Your Honors, if I may, I would just like to circle back to where I started, which is count one does allege ultimate facts. We've touched upon them here. 64 through 68 are those ultimate facts. Regardless of whether in the third amendment complaint or in the second amendment complaint, they allege ultimate facts. They're quintessential questions of fact. And therefore, it was an error to dismiss them under two, the third amendment complaint under 2615. And we ask that this court reverse the decision of the trial court and send this case back for trial. Barring any questions, I'll call it a day. Any questions? Any questions? One question. Are you asking for a leave to amend? We have not asked for leave to amend, Your Honor. All right. Thank you. Thank you. All right. We will be taking this matter under advisement, and we will issue a ruling in due course. And we thank you, gentlemen.